# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

VERONICA ANN BACA,

      Plaintiff,

v.                                      Civ. No. 20-225 WJ/GJF

ANDREW SAUL, *Commissioner of
the Social Security Administration*,

      Defendant.

## PROPOSED FINDINGS AND
## RECOMMENDED DISPOSITION

      THIS MATTER is before the Court upon Plaintiff Veronica Ann Baca's "Motion to Reverse and Remand for a Rehearing with Supporting Memorandum" [ECF 23] ("Motion"). The Motion is fully briefed. ECF 27 (response); ECF 28 (reply).[1] Having meticulously reviewed the entire record and the parties' briefing, the Court recommends that the Commissioner's final decision be **AFFIRMED**, that Plaintiff's Motion be **DENIED**, and that the instant case be **DISMISSED WITH PREJUDICE**.

## I.    BACKGROUND

      Plaintiff filed an application for a period of disability and disability insurance benefits on June 13, 2017. Administrative Record ("AR") at 177–81. In addition, Plaintiff protectively filed an application for supplemental security income on November 22, 2017. *Id.* at 182–92. Plaintiff alleged a disability onset date of August 14, 2013,[2] claiming that she was disabled by a combination of insulin-dependent diabetes mellitus, anemia, endocarditis, chronic kidney disease, anxiety,

---

[1] The Motion is before this Court on referral from the presiding judge. ECF 7.

[2] Plaintiff originally alleged an onset date of January 1, 2010, AR at 177, but later amended it to August 14, 2013. AR at 52–53, 283.

hepatitis C, neuropathy, gastroparesis, and depression. *Id.* at 211.[3] Both applications were denied initially and on reconsideration. *Id.* at 13, 73–96. After these denials, Plaintiff requested a hearing before an administrative law judge, AR at 116–17, which was held on February 25, 2019. AR at 45. The ALJ subsequently found that Plaintiff was not disabled between August 14, 2013, and May 8, 2019, the date of his decision. AR at 38. Plaintiff timely appealed the ALJ's decision to this Court. ECF 1.

## II.   PLAINTIFF'S CLAIMS

Plaintiff argues that the ALJ erred by failing to (1) "properly weigh the opinion of treating psychologist John Gray, Ph.D.;" (2) "properly weigh the opinion of treating provider" occupational therapist Micci Boyce; and (3) "develop the record regarding [Plaintiff's] functioning during the period at issue." ECF 23 at 1.

## III.   APPLICABLE LAW

### A.   Standard of Review

The Court's review of an ALJ's decision is both legal and factual. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence." (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992))).

In determining whether the correct legal standards were applied, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting

---

[3] At the hearing, Plaintiff also claimed that she suffered from degenerative disc disease, a "ruptured disc," and sciatica. AR at 16.

*Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). The Court may reverse and remand if the ALJ failed to "apply correct legal standards" or "show . . . [he] has done so." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)).

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (emphasis added). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (brackets in original) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "And . . . the threshold for such evidentiary sufficiency is not high.  Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla." *Id.* (internal quotation marks and citation omitted).  "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

Under this standard, a court should still meticulously review the entire record, but it may not "reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quoting *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004)); *Hamlin*, 365 F.3d at 1214. Indeed, a court is to "review only the sufficiency of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). Therefore, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). Furthermore, a court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been

before it de novo." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200) (brackets omitted).

Ultimately, if the correct legal standards were applied and substantial evidence supported the ALJ's findings, the Commissioner's decision stands, and Plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin*, 365 F.3d at 1214.

### B.  Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that she is unable to "engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A) (emphasis added).

The SSA has devised a five-step sequential evaluation process to determine disability.  *See Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (citing 20 C.F.R. § 416.920).  The claimant bears the burden of proof at steps one through four.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Williams v. Bowen*, 844 F.2d 748, 750-51, 751 n.2 (10th Cir. 1988).  In the first four steps, the claimant must show (1) that "[s]he is not presently engaged in substantial gainful activity," (2) that "[s]he has a medically severe impairment or combination of impairments," and either (3) that the impairment is equivalent to a listed impairment[4] or (4) that "the impairment or combination of impairments prevents [her] from performing [her] past work." *Williams*, 844 F.2d at 750-51; *Grogan*, 399 F.3d at 1261.

If the claimant has advanced through step four, the burden of proof then shifts to the Commissioner to show that the claimant nonetheless retains sufficient functional capacity "to perform other work in the national economy in view of [her] age, education, and work experience."

---

[4] If the claimant can show that she has a listed impairment, she will be found to be disabled and the analysis stops. 20 C.F.R. § 416.920(a)(4)(i-iv). Otherwise, if no listed impairment can be shown, the analysis moves on to step four. *Id.*

*Yuckert*, 482 U.S. at 142, 146 n.5.

## IV.  THE ALJ'S FINDINGS AND DECISION

### A.  Steps One Through Three

At step one, the ALJ found that Plaintiff was not engaged in substantial gainful activity since her alleged onset date. AR at 16. At step two, the ALJ determined that Plaintiff was severely impaired by: "chronic kidney disease; diabetes mellitus type 1; diabetic neuropathy; endocarditis due to [m]ethicillin-sensitive [s]taphylococcus [a]ureaus . . .; gastroparesis; major depressive disorder; obsessive compulsive disorder; and, anxiety." *Id.*[5] At step three, the ALJ concluded that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled the severity of a listed impairment. AR at 24–25 (citing 20 C.F.R. § 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).[6]

### B.  Step Four[7]

#### 1.  *Residual Functional Capacity ("RFC")*[8]

After "careful[ly] consider[ing] … the entire record[,]" the ALJ determined Plaintiff to have the following RFC:

---

[5] The ALJ also found several of Plaintiff's alleged impairments to be nonsevere, including her claimed arthritis, "ruptured" disc, sciatica, degenerative disc disease, hepatitis C, tendonitis in her feet, "bilateral rotator cuff syndrome," "ulcer of the sacral region," gastritis,  urinary tract infections, anemia, sepsis, diabetic retinopathy in the right eye, vitreous hemorrhage in the left eye, trigger finger, and right wrist fracture. AR at 16–22. In addition, the ALJ found that Plaintiff's alleged "slight stroke" was not a medically determinable impairment. AR at 22–23.

[6] "Listed impairments" refer to a set of certain impairments identified in the regulations. 20 C.F.R. § 404.1520(d). When the SSA finds that one of a claimant's impairments meets or medically equals one of those "listed" impairments, the SSA will find the claimant disabled without considering the claimant's "age, education, and work experience." 20 C.F.R. § 404.1520.

[7] The Tenth Circuit has described step four of the sequential evaluation process as occurring in three distinct phases. *Winfrey*, 92 F.3d at 1023. In phase one, the ALJ evaluates a claimant's physical and mental residual functional capacity. *Id.* In phase two, the ALJ assesses the physical and mental demands of the claimant's past relevant work. *Id.* Last, the ALJ applies the phase one findings to the phase two findings to determine whether, given the claimant's RFC, she could meet the physical and/or mental demands of her past relevant work. *Id.*

[8] The RFC describes the most a claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1).

[Plaintiff] has the residual functional capacity to perform light work . . . with the ability to lift 20lbs occasionally and lift and push and pull the same. Able to walk and stand for 6 hours per eight-hour workday and sit for 6 hours per eight-hour workday with normally scheduled breaks. She is able to occasionally climb ramps and stairs, but never climb ladders, ropes and scaffolds. She is able to occasionally balance, stoop, crouch, kneel and crawl. [Plaintiff] must avoid more than occasional exposure to unprotected heights and dangerous moving machinery. [Plaintiff] is able to occasionally interact with supervisors, coworkers and the public. Lastly, [Plaintiff] is able to maintain concentration, persistence and pace for two hours at a time during the workday with normally scheduled breaks.

AR at 25.

The ALJ began his supporting analysis by considering Plaintiff's statements about her symptoms and the limiting effects of those symptoms. Plaintiff reported that she lived with her late brother's family and that her nephew was employed as her caregiver. *Id.* Plaintiff's typical days involved "waking up, taking medications, getting up and talking with her nephew until the children in the household [went] to school, going to appointments or shopping, or staying home if nothing was scheduled." *Id.* At the hearing, Plaintiff claimed that she could not work even a "simple" office job because if she sat or stood too long she would "get sick." *Id.* at 65–66.

The ALJ found that although Plaintiff's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms," her statements regarding the limiting effects of her symptoms were "not entirely consistent with the medical . . . and other evidence in the record" and that the "overall evidence of record d[id] not substantiate the extent of her alleged limitations." *Id.* at 27–28. With respect to her mental symptoms, the ALJ found that the record reflected only "routine and conservative treatment including medication from her primary care providers and psychotherapy." *Id.* at 29. In fact, the ALJ noted that Plaintiff's psychotherapy treatment record was "notable only for periodic findings of depressed mood and affect." *Id.* at 30.

The ALJ also considered Plaintiff's alleged physical impairments. First, the ALJ observed that although Plaintiff was hospitalized for her endocarditis in November 2016, she appeared to

6

have largely recovered by April 2017. *Id.* at 30–31; *see also id.* at 628, 665–72, 752–882, 754–58, 891–959, 992–1040, 1062–1126, 1298–1486. Next, the ALJ found that the record did not support that Plaintiff was significantly limited by her diabetic neuropathy. AR at 31.[9] Specifically, the ALJ noted a marked dearth of objective medical evidence supporting that Plaintiff suffered from neurologic defects. *Id.*; *see also id.* at 665–71, 752–882, 891–959, 992–1040, 1062–1126. Moreover, the ALJ found that although Plaintiff walked with a cane and employed a caregiver to perform household tasks, the objective medical evidence did not support that either the cane or the caregiver were medically necessary. *Id.* at 32. Last, the ALJ determined that Plaintiff's history of gastroparesis and kidney disease was sporadic and that the record contained minimal "objective findings and treatment for [those] conditions." *Id.* at 33; *see also id.* at 656–67, 819–22, 974–85, 970–73, 992–1040, 1092–96, 1191, 1201–02 1250–66. In light of these findings, the ALJ concluded that Plaintiff's physical impairments could be adequately accounted for in the RFC by limiting her to "light exertion . . .[,] occasional postural activities except no climbing ladders, ropes or scaffolds, and the need to avoid more than occasional exposure to unprotected heights and dangerous moving machinery." *Id.* at 31–33.

The ALJ evaluated the opinions of Plaintiff's treatment providers Dr. John Gray, Dr. Jerica Johnson, Dr. Jaleh Akhavan, and occupational therapist Micci Boyce.[10] The record also included the opinions of four state agency consultants (two who provided opinions on Plaintiff's physical limitations and two who offered opinions on Plaintiff's non-physical limitations), each of whom

---

[9] "Diabetic neuropathy is a type of nerve damage," which some people with diabetes experience. Diabetic Neuropathy, Mayo Clinic (Mar. 3, 2020), https://www.mayoclinic.org/diseases-conditions/diabetic-neuropathy/symptoms-causes/syc-20371580.

[10] Because Plaintiff only argues that the ALJ erred in weighing Dr. Gray's and Ms. Boyce's opinions, the Court limits its recounting of the medical opinions of record to those two opinions. *See* ECF 23 at 10 n.6, 16. The Court notes, however, that the ALJ found the opinions of Drs. Johnson and Akhavan unpersuasive. AR at 34–35.

concluded that there was insufficient evidence in the record to assess Plaintiff's work-related limitations. *Id.* at 79–80, 89–92. The ALJ found the state agency opinions unpersuasive because they were "not consistent with the overall evidence of record." *Id.* at 36.

In May 2018, Dr. Gray completed a "Medical Assessment of Ability to Do Work-Related Activities (Mental)." *Id.* at 966. Dr. Gray opined that Plaintiff had seven moderate limitations and six marked limitations in her capacity to perform a variety of work-related mental functions. *Id.* at 966.[11] Dr. Gray concluded that these limitations would "interfere with [Plaintiff's] ability to attend work" such that she would be expected to "miss more than 50% of work." *Id.* Dr. Gray also believed that Plaintiff's obsessive-compulsive disorder would make her an inefficient worker because it would cause her to repeat tasks or steps since she had a purported inability to perform an odd number of functions. *Id.* at 33. The ALJ found Dr. Gray's opinion unpersuasive because it was inconsistent with the record. *Id.* at 33–34.  Particularly, while many of the limitations assessed by Dr. Gray indicated that Plaintiff had significant attention deficits, Dr. Gray's treatment records showed otherwise. *Id.* at 33–34. For instance, Dr. Gray noted Plaintiff's ability to recount her detailed medical history and that she enjoyed activities requiring some degree of concentration like completing puzzles. *Id.* at 34 (citing AR at 611–13).

In January 2019, Ms. Boyce also completed a "Medical Assessment of Ability to Do Work-Related Activities" form. *Id.* at 1127. Ms. Boyce opined that Plaintiff could occasionally lift less than ten pounds and could frequently lift less than five pounds. *Id.* at 1128. Ms. Boyce found that

---

[11] "Moderate limitations" were defined as those that "seriously interfere[] with the individual's ability to perform the designated activity on a regular and sustained basis." AR at 966 (emphasis omitted). "Marked limitations" were described as those that "preclude the individual's ability to usefully perform the designated activity on a regular and sustained basis." AR at 966 (emphasis omitted). The form filled out by Ms. Boyce employed the same definitions. *See* AR at 960–68, 1401–43, 1127–29.

Plaintiff could only occasionally handle,[12] finger,[13] and keyboard with either hand. *Id.* Ms. Boyce further concluded that Plaintiff could never kneel, stoop, crouch, or crawl. *Id.* Ms. Boyce commented that Plaintiff "ha[d] significant global weakness, bilateral lower extremity neuropathy [and] shoulder, lower back, leg, [and] hand pain." *Id.* at 1129. These symptoms, Ms. Boyce concluded, resulted in Plaintiff having marked limitations in maintaining physical effort for long periods without a need to decrease activity or pace, sustaining an ordinary routine without special supervision, and completing a normal workday and workweek without interruptions. *Id.* The ALJ found Ms. Boyce's opinion unpersuasive because she treated Plaintiff for a right wrist injury but did not limit her opinion to Plaintiff's right wrist. *Id.* Moreover, the ALJ observed that Ms. Boyce's assessed indications of global weakness, neuropathy, and pain were unsupported by the record as there was little documentation of Plaintiff suffering from neurological defects. *Id.* at 36 (citing AR at 1004–07, 1070, 1118–20). Further, the ALJ noted that some of the impairments capable of producing pain (i.e., right trigger finger[14] and right wrist fracture) on which Ms. Boyce relied in making her assessment did not meet the "durational requirement." *Id.*[15]

   2. *Past Relevant Work*

   The ALJ found that Plaintiff could not perform her past work as a caregiver, because the occupation requires medium exertion and the ALJ determined that Plaintiff could perform only light

---

[12] "Handling" was defined as "[s]eizing, holding, grasping, turning, or otherwise working with the hand or hands. Fingers are involved only to the extent that they are an extension of the hand." AR at 1128.

[13] "Fingering" was defined as "[p]icking, pinching, or otherwise working with the fingers primarily." AR at 1128.

[14] "Trigger finger" is a condition in which a finger gets stuck in a bent position. Trigger Finger, Mayo Clinic (Oct. 20, 2020), https://www.mayoclinic.org/diseases-conditions/trigger-finger/symptoms-causes/syc-20365100. Trigger finger "occurs when inflammation narrows the space within the sheath that surrounds the tendon in the affected finger." *Id.*

[15] For an impairment to be considered "severe," it must be expected to result in death or last or be expected to last continuously for over twelve months. 20 C.F.R. § 404.1509.

work. AR at 36–37.

### 3. Step Five

"Considering the [Plaintiff's] age, education, work experience, and residual functional capacity," the ALJ concluded that there were "jobs that exist[ed] in significant numbers in the national economy that" Plaintiff could perform on the alleged onset date. AR at 37 (citing 20 C.F.R. §§ 404.1569, 404.1569a, 416.969, 416.969a). Based on the vocational expert's testimony, the ALJ found that Plaintiff could perform the representative occupations of garment sorter (205,000 national jobs), housekeeper (850,000 national jobs), and laundry classifier (41,000 national jobs). AR at 37–38. Accordingly, the ALJ concluded that "[a] finding of 'not disabled' [was] . . . appropriate." *Id.* at 38.

## V. DISCUSSION

### A. Weighing Opinions[16]

#### 1. *The ALJ's decision to find Dr. Gray's opinion unpersuasive was supported by substantial evidence*[17]

Plaintiff argues that "[t]here [wa]s nothing" in the ALJ's "decision to indicate he considered the factors found" in the regulations "when assigning weight to Dr. Gray's opinion." ECF 23 at 11.

The SSA evaluates the persuasiveness of medical opinions based on: (1) the degree to

---

[16] In her briefing, Plaintiff only challenged the ALJ's weighing decisions with respect to Dr. Gray's and Ms. Boyce's opinions. ECF 23. Plaintiff tries to hedge her position by stating that the types of errors the ALJ made with respect to those opinions are illustrative of the errors the ALJ made in evaluating other opinions in the record, thereby suggesting that the Court review the ALJ's weighing decisions regarding the opinions that Plaintiff did *not* brief. *See* ECF 23 at 10 n.6. But because the issues related to those unbriefed opinions are not properly before the Court, it declines to review them. *Keyes-Zachary v. Astrue*, 695 F.3d 11256, 1161 (10th Cir. 2012) ("We will consider and discuss only those of [plaintiff's] contentions that have been adequately briefed for our review.").

[17] Although the parties have framed the ALJ's decision with respect to Dr. Gray's and Ms. Boyce's opinions as a "weighing" issue, the SSA no longer "weighs" opinions but rather evaluates whether each opinion is persuasive. 81 Fed. Reg. 62574 ("We . . . propose to focus on the persuasiveness of medical opinions . . . instead of the weight of an opinion.").

which the opinion is supported by objective medical evidence and supporting explanation; (2) how consistent the opinion is with other evidence in the record; (3) the source's treating relationship with the claimant (i.e., how long/frequently the source treated the claimant and for what purpose); (4) whether the source was specialized on the impairment on which he or she is opining; and (5) any other factor tending to support or contradict the opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors are "supportability . . . and consistency." 20 C.F.R. § 404.1520c(a). The SSA does not give "any specific weight, including controlling weight, to any medical opinion(s)." *Id.*

That last point is important because until recently the SSA applied a "treating physician rule," which *required* an ALJ to confer controlling weight to a treating source opinion if it was (1) supported by medically acceptable clinical and laboratory diagnostic techniques and (2) consistent with the record. *Compare* 20 C.F.R. § 404.1520c, *with* 20 C.F.R. § 404.1527. In abrogating the treating physician rule, the SSA noted that its former regulations caused courts to be too focused on whether the SSA "sufficiently articulated the weight [it] gave treating source opinions, rather than on whether substantial evidence support[ed] [its] final decision[s]." 82 Fed. Reg. 5853. Because Plaintiff filed her claims after March 27, 2017, AR at 177–192, 20 C.F.R. § 404.1520c applies to her claim. 20 C.F.R. § 404.1520c.[18]

In considering the persuasiveness of medical opinions, the ALJ "must discuss the weight he assigns." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). The ALJ is not

---

[18] In her opening brief, Plaintiff argued that the ALJ erred in applying the treating physician rule when weighing Dr. Gray's opinion. ECF 23 at 10–21. After Defendant pointed out that the regulations applicable to Plaintiff's claim no longer include the treating physician rule, ECF 27 at 4–6, Plaintiff conceded that 20 C.F.R. § 1520c applies here. ECF 28 at 1. The significance of this point, in terms of the Court's analysis, turns out to be mostly inconsequential. While Plaintiff's arguments are framed as error under the now-defunct treating physician rule, they may be fairly read as contending that the ALJ's weighing decision was not based on substantial evidence because the ALJ did not articulate legally sufficient reasons. *See* AR 23 at 11 ("[T]he ALJ gave several reasons for why Dr. Gray's opinion lacked persuasiveness . . . However, these reasons are not specific or legitimate."). Accordingly, that is the framework the Court will work with in evaluating Plaintiff's arguments.

required to discuss each factor articulated in the regulations; rather, the ALJ must merely explain his weighing decision with sufficient specificity so as to be capable of review. *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). Put differently, if an ALJ rejects an opinion, he "must then give 'specific, legitimate reasons for doing so.'" *Id.* (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)). The Court finds that the ALJ gave sufficient reasons for finding Dr. Gray's opinion unpersuasive.

Plaintiff first takes issue with the ALJ's statement that Dr. Gray's opinion was "not generally consistent with the overall evidence of record, including his contemporaneous treatment notes." ECF 23 at 12 (citing AR at 33). Plaintiff says that the ALJ was not permitted to find Dr. Gray's opinion unpersuasive on the basis of inconsistency because "it is clear that finding a treating physician's explanation of his opinion to be inconsistent with the record does not constitute a sufficient reason to reject it." *Id.* (citing *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002)).[19] But the regulations identify "consistency" as one of two "most important factors" considered by the SSA in evaluating the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(a). Specifically, "[t]he more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." 20 C.F.R. § 404.1520c(c)(2). As the ALJ observed, Dr. Gray opined that Plaintiff had serious problems with attention, concentration, and memory, but Dr. Gray's treatments notes indicated that Plaintiff could provide a detailed medical history. AR at 35; *see also id.* at 611–12, 613–14. Further, Dr. Gray and Plaintiff's other primary care providers did not

---

[19] *McGoffin* does not control here because the decision was based on an application of the treating physician rule, which, as discussed *supra* at 11–12, was abrogated by 20 C.F.R. § 404.1520c. *See McGoffin*, 288 F.3d at 1252 (holding that an ALJ "may reject a *treating* physician's opinion outright only on the basis of contradictory medical evidence." (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3rd Cir. 2000) (emphasis added)).

document the existence of these impairments in their treatment notes. *Id.*; *see also* AR at 611–12, 613–14; 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[] …, the more persuasive the medical opinion[] … will be.").[20] Because the ALJ properly considered the consistency as well as the supportability of Dr. Gray's opinion and sufficiently articulated his decision, the Court finds that the ALJ did not err in weighing Dr. Gray's opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (holding that an ALJ's written decision "'must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" (quoting SSR 96-2p, 1996 WL 374188, at *5)).

Plaintiff also argues that: (1) the fact that Plaintiff "was able to provide her own medical history d[id] not present any significant conflict with Dr. Gray's findings of limitation," ECF 23 at 14; (2) the ALJ was factually incorrect when he wrote that Plaintiff did not have significant side effects from her medications and even if that statement were true it would not have undermined Dr. Gray's findings, *id.* at 14–15; (3) the ALJ did not explain how Dr. Gray's "periodic findings of depressed mood and affect" "preclude[d] a finding of disability," *id.* at 15; (4) the ALJ did not adequately explain how Plaintiff enjoying puzzles and keeping busy contradicted with Dr. Gray's findings, *id.* at 15–16; and (5) "it is unclear how [Plaintiff's] completion of . . . minimal goals present[ed] a conflict with Dr. Gray's opinion, considering that this achievement led to [Plaintiff] feeling depressed and directionless," *id.* at 16.

---

[20] Plaintiff argues that the lack of documentation by Dr. Gray supporting these purported deficits was reasonable (and presumably excusable) because the form Dr. Gray used to document Plaintiff's treatment did not include a section prompting him to record his observations concerning Plaintiff's attention, concentration, and memory. AR at 33–34 (citing AR at 610–17). While this may be true, Plaintiff does not identify *any* of Dr. Gray's notes (or any other part of the record) *supporting* these findings. ECF 23 at 13; 20 C.F.R. § 404.1520c(a) ("The most important factors we consider when we evaluate the persuasiveness of medical opinions . . . are supportability . . . and consistency").

These arguments, however, are without merit as they ask the Court to reweigh the evidence. *Newbold*, 718 F.3d at 1262. It's worth emphasizing that the standard by which the Court reviews the ALJ's decision is not whether the Court agrees with the ALJ's conclusions, but whether the ALJ gave specific and legitimate reasons for rejecting Dr. Gray's opinion. *Langley*, 373 F.3d at 1119. What constitutes "legitimate" reasons are those identified by 20 C.F.R. § 404.1520c. Here, the ALJ found that Dr. Gray's opinion was inconsistent with his treatment notes.  For instance, the ALJ found that Dr. Gray's opinion that Plaintiff had significant problems with attention and concentration was inconsistent with Dr. Gray's documentation of Plaintiff's ability to "provide a detailed history . . ., including the history of her symptomatology, prior treatment, and . . . substance addiction." AR at 34; 20 C.F.R. § 404.1520c(c)(2). Moreover, Plaintiff's arguments do not touch on supportability—the other most important factor identified by the SSA. 20 C.F.R. § 404.1520(b)(2). Even if the inconsistencies the ALJ identified were not in of themselves sufficient to reject Dr. Gray's opinion, the ALJ was entitled to do so on supportability grounds. 20 C.F.R. § 404.1520c(c)(1); *see also* AR at 34 ("Similar to her primary care providers, there is a significant absence of *any* documentation of deficits in attention, concentration, and memory." (emphasis added)).

### 2.  *The ALJ did not err in finding Ms. Boyce's opinion unpersuasive*

Plaintiff next contends that the ALJ did not provide adequate reasons for finding Ms. Boyce's opinion unpersuasive. AR at 17. The Court disagrees.

Under the regulations governing claims filed before March 27, 2017, Ms. Boyce's opinion would not be considered a "medical opinion."[21] Under the present regime, however, a medical

---

[21] Under the regulations applicable to claims filed before March 27, 2017, "medical opinions" were limited to "statements from *acceptable medical sources* that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Because occupational

opinion is a "statement from a medical source about what [a claimant] can do despite [his or her] impairment(s) and whether [he or she] ha[s] one or more impairment-related limitations or restrictions" in listed work-related abilities. 20 C.F.R. § 404.1513(a)(2)(i)-(iv) (2017). Medical sources are individuals who are "licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law." 20 C.F.R. § 404.1502(d). Because Ms. Boyce is licensed physical therapist and therefore a medical source, her opinion is a "medical opinion." *Id.* Thus, the ALJ was required to evaluate Ms. Boyce's opinion under the current rubric set forth by 20 C.F.R. § 404.1520c.

The Court holds that the ALJ did not commit reversible error in finding Ms. Boyce's opinion unpersuasive. As described above, an ALJ appraises the persuasiveness of a medical opinion based on the opinion's supportability and consistency, the medical source's relationship with the claimant, the medical source's specialization, and any other factor the ALJ determines supports or contradicts the opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). Supportability and consistency are the most crucial factors. 20 C.F.R. § 404.1520c(b)(2). And, importantly, an ALJ is not required to articulate how the other (less important) factors played into his finding on an opinion's persuasiveness. *Id.* ("We may, *but are not required to*, explain how we considered the factors in paragraphs (c)(3) through (7) of this section, as appropriate, when we articulate how we considered the medical opinions and prior administrative medical findings from acceptable medical sources in your case record."(emphasis added)).

Here, the ALJ addressed the consistency of Ms. Boyce's opinion by observing that Ms. Boyce's indications of global weakness and neuropathy of the lower extremities were inconsistent with her other findings noted in her opinion. AR at 36. And the ALJ discussed the supportability

therapists were not listed as acceptable medical sources, Ms. Boyce's opinion would not have been considered a "medical opinion." *See* 20 C.F.R. § 404.1513(a)(1)-(5) (2013).

of Ms. Boyce's opinion by noting that the record did not support Ms. Boyce's conclusions on the limiting effect of Plaintiff's neuropathy. *Id.*[22] Moreover, the ALJ noted that Ms. Boyce's opinion on Plaintiff's *lower extremities* was unsupported by Ms. Boyce's contemporaneous treatment notes considering that she treated Plaintiff for a *right wrist fracture*. *Id.*[23] In sum, the ALJ articulated legally sufficient reasons for finding Ms. Boyce's opinion unpersuasive by discussing why he found the opinion to be both inconsistent with and unsupported by the record.

### B.  The ALJ Was Not Required to Further Develop the Record

Plaintiff insists that because the ALJ found each of the medical opinions in the record unpersuasive (including those of the state agency consultants) and found that Plaintiff's statements on the limiting effects of her limitations unpersuasive, the ALJ erred by not further developing the record. AR at 21–27.

"'In a social security disability case, the claimant bears the burden to prove her disability.'" *Wall v. Astrue*, 561 F.3d 1048, 1062–63 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067 (10th Cir. 2007)). But "[i]n some situations" the SSA cannot make a determination because the evidence in the record "is insufficient or inconsistent." 20 C.F.R. § 404.1520b. Evidence is

---

[22] Plaintiff argues that the ALJ erred in making this finding because it is contradicted by the ALJ's earlier finding that Plaintiff's neuropathy was a severe impairment. ECF 23 at 20; *see generally* AR at 16. Plaintiff, however, misunderstands the significance of an ALJ's finding that an impairment is "severe." "A severe impairment is one that affects an individual's ability to perform basic work-related activities for an adult or that causes more than minimal functional limitations for a child." SSR 16-3p, 2017 WL 5180304, at *11. An ALJ's finding that an impairment is severe at step two of the sequential evaluation process is *not* a finding of the limiting effect of the impairment for the purpose of the RFC. *See id.* at *12 (noting that the RFC is an assessment of "the most [a claimant] can still do despite his or her impairment-related limitations"); *see also* 20 C.F.R. § 404.1545 (noting that the RFC is formulated considering all of a claimant's "medically determinable impairments" including the claimant's "medically determinable impairments that are not 'severe'"). In other words, the ALJ's step two finding that Plaintiff's neuropathy was a severe impairment did not necessarily contradict his later finding that the record did not support Ms. Boyce's opinion on the *limiting effect* of Plaintiff's neuropathy.

[23] Plaintiff contends that the ALJ should have assigned more importance to the fact that Ms. Boyce noted that her opinion was based on "observations" and not solely on her own treatment notes. ECF 23 at 18. Plaintiff's point does little, however, to undermine the ALJ's finding that Ms. Boyce's opinion on Plaintiff's lower extremities was unsupported by the record. Indeed, Plaintiff does not direct the Court's attention to *any* part of the record supporting Ms. Boyce's findings on Plaintiff's lower extremities. *See* ECF 23 at 17–18.

"insufficient when it does not contain all the information" the SSA needs to make a decision. *Id.* In that case, the SSA "*may* need to take . . . additional actions." *Id.* One such action is for the SSA to "ask [a claimant] to undergo a consultative examination" at its expense. 20 C.F.R. § 404.1520b(b)(2); 20 C.F.R. § 404.1517. The Tenth Circuit has interpreted these regulations to impose an affirmative duty on an ALJ to ensure that an adequate record is developed during a disability hearing. *Wall*, 561 F.3d at 1048. "This duty is not a panacea for claimants, however, which requires reversal in any matter where the ALJ fails to exhaust every potential line of questioning." *Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994). Specifically, in a counseled case, "the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Cowan v. Astrue*, 552 F.3d 1182, 1188 (10th Cir. 2008) (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1167–68 (10th Cir. 1997)). And, of course, there is no "need to further develop the record" when "sufficient information" exists "for the ALJ to make [his] disability determination." *Id.*

Because the ALJ had sufficient information to make a disability finding, the ALJ was not required to further develop the record. *C.f. id.*[24] The objective medical evidence in the record demonstrated that none of Plaintiff's severe impairments significantly limited her. With respect to Plaintiff's mental impairments, her primary care providers and Dr. Gray documented only unremarkable findings and conservative treatment. AR at 28–29. Specifically, Plaintiff's primary care providers "consistently noted unremarkable findings in mood, affect, orientation, and thought

---

[24] Plaintiff appears to contend that in drafting an RFC, an ALJ is required to rely on at least *one* medical opinion. ECF 23 at 21–22. The Court disagrees. The ALJ alone is charged with formulating the RFC. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). Indeed, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion." *Id.* at 1289; *see also Wall*, 561 F.3d at 1068–69 (upholding ALJ's findings on plaintiff's pain disorder where record did not contain any treating or examining medical opinion on the alleged impairment). Moreover, the Court notes that it is unaware of, and the Plaintiff does not cite to, *any* statutory or regulatory language requiring an ALJ to rely on at least one medical opinion to draft the RFC. *See* ECF 23 at 21–27.

process, despite [Plaintiff's] varying complaints of depression and anxiety." *Id.* at 29. Similarly, Plaintiff's physical impairments also appear to have warranted only conservative treatment. Plaintiff was diagnosed with endocarditis in November 2016, and it appears to have been resolved by April 2017, with no further mention afterward. *Id.* at 30–31; *see also* AR at 628, 665–72, 789–92. And although Plaintiff was diagnosed with diabetic neuropathy, Plaintiff was consistently noted to not suffer from significant neurologic deficits. *Id.* at 31; *see also* AR at 752–882, 891–959, 1062–1126. Likewise, while Plaintiff was diagnosed with gastroparesis, Plaintiff was often not treated for the condition and when she was, she was treated conservatively. *Id.* at 32; *see also* AR at 754–58, 819–22, 993–1003, 1030–32, 1296–1486. As for Plaintiff's chronic kidney disease, the record documents *one* instance in which Plaintiff saw a renal specialist. *Id.* at 33; *see also* AR at 656–57. Notably, after that consultation no other such consultation is recorded. *Id.* Simply put, the Court cannot say that the over one-thousand pages of medical records documenting conservative treatment for each of Plaintiff's impairments was such an insufficient basis that the ALJ was required to supplement the record.[25]

Moreover, the Court observes that this is a counseled case and counsel has not represented (nor is the Court aware) that Plaintiff ever requested a consultative examination. Further, Plaintiff does not identify any impairment she believed the ALJ could not have effectively assessed absent a medical opinion. ECF 23 at 21–26; ECF 28 at 7–10; AR at 289 (counsel writing to the Appeals

---

[25] At the hearing, the ALJ suggested that Plaintiff amend her alleged onset date to January 1, 2017. AR at 66. Plaintiff declined to do so, keeping the August 14, 2013, alleged onset date. AR at 67. The ALJ later informed Plaintiff that his offer to amend no longer remained "on the table." AR at 67. Plaintiff argues that once the ALJ retracted this offer, the hearing was transformed into "an *adversarial* proceeding." ECF 23 at 26 (emphasis in original); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1493 (10th Cir. 1993) (noting that an ALJ has a duty to ensure disability hearings are non-adversarial). Plaintiff reasons that because the ALJ  "was willing to provide benefits" based on the amended onset date, she was prejudiced when the ALJ issued an entirely adverse position instead of issuing a partially favorable position, finding her disabled beginning January 1, 2017. ECF 23 at 26. The Court disagrees with Plaintiff's version of events. The ALJ did not offer to find Plaintiff disabled if she accepted the 2017 onset date. Instead, the ALJ emphasized that he was "not bound by any possible Onset Date [he] amended" and that he could "go back after the hearing and determine that" Plaintiff was "not disabled *at any time*." AR at 67 (emphasis added).

Council that the ALJ erred by "offering to find [Plaintiff] disabled as of January 1, 2017" and later revoking that "offer"); *Cowan*, 552 F.3d at 1188 ("[I]n a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development) (quoting *Hawkins*, 113 F.3d at 1167–68); *see also Glass v. Shalala*, 43 F.3d 1392, 1394–96 (10th Cir. 1994) (declining to remand for further development of the record where claimant failed to specify what additional information was necessary for the ALJ to make his decision). Similarly, Plaintiff did not identify any additional evidence or opinion that the ALJ should have considered (but didn't) either to the Appeals Council, AR at 289, or to this Court.

## VI.  CONCLUSION

The ALJ applied the correct legal standards and his findings and decision were supported by substantial evidence.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's final decision be **AFFIRMED**, that Plaintiff's Motion be **DENIED**, and that the instant cause be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed**.